

# NUMBER 13-06-00132-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

ESTEBAN GUTIERREZ, JR.,                                                    Appellant,

v.

THE STATE OF TEXAS,                                                          Appellee.

### On appeal from the 139th District Court
### of Hidalgo County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Garza and Benavides
Memorandum Opinion by Chief Justice Valdez**

A jury found appellant, Esteban Guiterrez, Jr., guilty of indecency with a child by contact and indecency with a child by exposure. *See* TEX. PENAL CODE. ANN. § 21.11(a)(1), (2) (Vernon 2003). The jury assessed punishment at two years' confinement and a fine of $10,000. Appellant's prison sentence was probated for ten years. On appeal, appellant contends that he is entitled to a new trial because: (1) the State failed to disclose allegedly

exculpatory evidence, and (2) the State presented false testimony. We affirm.

## I. BACKGROUND

In 2003, sixteen-year-old S.B. worked as a lifeguard for the city of McAllen. Appellant was S.B's instructor and supervisor. At trial, S.B. recounted various incidents of abuse, including an incident where appellant reached into S.B.'s "crotch area" and a second incident where appellant kissed S.B. and "reached for [her] breast over [her] shirt." Most relevant here, however, is an incident that occurred on December 30, 2003, where, according to S.B., appellant sexually assaulted her in the pool "pump house."

S.B. testified she worked the 6:00 to 9:00 p.m. shift, and that the only other employee who was working that night was shift manager Margarita Reyes. S.B. further testified that when appellant arrived at approximately 8:30 p.m., he asked her to accompany him to the pump house so that he could show her how to manage the pool chlorine levels. She agreed. According to S.B., after they walked into the pump house, appellant closed the door behind them, turned off the lights, pulled her towards him, and tried to kiss her. Although she pulled away, he grabbed her by the shoulder and pushed her down over a stool, facing down. He then removed her shorts and underwear, took out his penis, and put it in her vagina.

Appellant was indicted on one count of sexual assault, one count of indecency with a child by contact, and one count of indecency with a child by exposure. *See Id*. §§ 22.011, 21.11(a)(1), (2). All three counts were alleged to have occurred "on or about December 30, 2003." A jury returned guilty verdicts for the indecency with a child by contact and indecency with a child by exposure counts, but acquitted appellant of the sexual assault count. Appellant filed a motion for new trial, which was denied. This appeal

2

followed.

## II. Discussion

### A. Standard of Review

All of the issues raised in this appeal were asserted by appellant in his motion for new trial. We review a trial court's denial of a motion for new trial under an abuse of discretion standard. *Holden v. State*, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006). A trial court abuses its discretion in denying a motion for new trial only when no reasonable view of the record could support the trial court's ruling. *Id.*

### B. False Testimony

As his second issue,[1] appellant argues that the State violated his right to due process by presenting false testimony at trial. Specifically, appellant complains that S.B.'s testimony that Reyes was the only other employee who worked December 30 was false, and the State's failure to correct the false testimony led to an unfair trial. In support of his claim, appellant, at the hearing on his motion for new trial, introduced time sheets as evidence that Reyes worked on December 29 rather than December 30.[2]

### 1. Applicable Law

A prosecutor's knowing use of perjured testimony violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Mooney v. Holohan*, 294 U.S. 103, 112 (1935). Likewise, a prosecutor's knowing failure to correct such testimony

---

[1] We address appellant's issues out of order for purposes of organization. *See* TEX. R. APP. P. 47.1 (providing that the court of appeals must hand down a written opinion that is brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal).

[2] The record shows that the time sheets were introduced into evidence both at trial and at the hearing on appellant's motion for new trial.

denies a defendant due process. *Napue v. Illinois*, 360 U.S. 264, 269 (1959). It does not matter whether the prosecutor actually knows that the evidence is false; it is enough if the prosecutor should have recognized the misleading nature of the evidence. *Duggan v. State*, 778 S.W.2d 465, 468-69 (Tex. Crim. App. 1989); *Ramirez v. State*, 96 S.W.3d 386, 395-96 (Tex. App.–Austin 2002, pet. ref'd). Nor is it significant that the falsehood goes merely to an issue of credibility. *Napue*, 360 U.S. at 269. The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the credibility of witness that a defendant's life or liberty may depend. *Id*.

From the record, we must determine: (1) if the State "used" the testimony; (2) whether the testimony was "false"; (3) whether the testimony was "knowingly used"; and (4) if the State's questions are affirmatively answered, whether there is a reasonable likelihood that the false testimony could have affected the jury's judgment. *Ramirez*, 96 S.W.3d at 394-95. The State contends, and we agree, that appellant has failed to show that the State "knowingly used" the testimony and that the testimony could have affected the jury's judgment.

## 2. Analysis

At the motion for new trial hearing, the State prosecutor testified that he first came across Reyes's name while reviewing various police reports within the case file. He acknowledged that one particular report showed that S.B. had mentioned that Reyes was the only other employee at the pool the night of the incident. He further testified that when he contacted Reyes two weeks prior to trial, she denied recalling whether she worked the night of the December 30 or whether she ever saw S.B. accompany appellant to the pool

4

pump house. Appellant's trial counsel testified that he had full access to the State's file in this matter, and he acknowledged that nothing in the file gave him any reason to believe that Reyes worked December 29 rather than December 30.

It is apparent from the record that appellant came into possession of the time sheets before the State did. On appeal, the State acknowledges that "the prosecution had not thought to obtain the City's employee records, and was unaware, until it was brought out by the defense at trial, that Reyes had not even worked on December 30. . . ." Apparently, appellant first realized that S.B.'s testimony may have been incorrect when Linda Hughes, appellant's sole defense witness, testified that the time sheets, introduced as evidence by appellant's trial counsel, showed that Reyes had not worked on December 30. Nothing in the record, however, shows that the State was aware of this fact when S.B. took the witness stand. Reviewing the record in its entirety, we find no evidence that when the State elicited S.B.'s testimony it was aware that S.B.'s claim that Reyes worked December 30 may have been false.

More importantly, appellant does not explain how any inconsistency mentioned by S.B. could have affected the course or outcome of the trial. Appellant introduced the time sheets into evidence at trial and the jury heard Hughes's testimony that Reyes did not work on December 30. It is entirely possible, therefore, that in reaching its verdict the jury was aware of the fact that S.B's testimony may have been incorrect. Appellant has simply failed to show that the State knowingly elicited false testimony or that the false testimony could have affected the ultimate judgment of the jury. *See Ramirez*, 96 S.W.3d at 394-95. We overrule appellant's second issue.

## C. Exculpatory Evidence

By his first issue, appellant argues that the State attorney's failure to disclose the fact that he had contacted Reyes prior to trial and that she had provided him with exculpatory information denied him due process of law. Attached to appellant's motion for new trial is Reyes's affidavit, wherein she swears that she received two phone calls from the District Attorney's office, and that she informed the prosecutor that although she had no recollection of December 30, 2003, she "never saw [appellant] go to the pump house when [S.B.] was working, and that [S.B.] was always on deck with [her] when there were swimmers in the pool." Citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963), appellant claims that this information is exculpatory and could have been used for impeachment purposes.

In *Brady*, the United States Supreme Court concluded that the suppression by the prosecution of evidence favorable to a defendant violated due process if the evidence is material either to guilt or punishment, without regard to the good or bad faith of the prosecution. *See id.*; *Harm v. State*, 183 S.W.3d 403, 405 (Tex. Crim. App. 2006); *Wyatt v. State*, 23 S.W.3d 18, 27 (Tex. Crim. App. 2000). To find reversible error under *Brady*, a defendant must show that: (1) the State failed to disclose evidence, regardless of the prosecution's good or bad faith; (2) the withheld evidence is favorable to him; and (3) the evidence is material, that is, there is a reasonable probability that had the evidence been disclosed, the outcome of the trial would have been different. *Hampton v. State*, 86 S.W.3d 603, 612 (Tex. Crim. App. 2002); *see Harm*, 183 S.W.3d at 405.

### 1. Suppression

The first element of *Brady* is present if the prosecution actively suppresses evidence or negligently fails to disclose it. *Juarez v. State*, 439 S.W.2d 346, 348 (Tex. Crim. App.

6

1969); *Smith v. State*, 840 S.W.2d 689, 693 (Tex. App.–Fort Worth 1992, pet. ref'd); *Taylor v. State*, 93 S.W.3d 487, 498-99 (Tex. App.–Texarkana 2002, pet. ref'd). While the State has an affirmative duty to disclose, it is "not required to facilitate the compilation of exculpatory material that could have been compiled by the defense." *Taylor*, 93 S.W.3d at 499. Thus, without suppression, there is no *Brady* violation. *Id.*; *see also Staten v. State*, 919 S.W.2d 493, 498 (Tex. App.–Fort Worth 1996, pet. ref'd) (explaining that no *Brady* violation exists unless it is shown that the defendant was actually denied access to the allegedly favorable material).

At the hearing on appellant's motion for new trial, appellant's counsel conceded that the State maintained an open file policy with him throughout the proceedings below. Generally, if the State opens its file for examination by defense counsel, it fulfills its duty to disclose *Brady* evidence. *Brewer v. State*, 126 S.W.3d 295, 305 (Tex. App.–Beaumont 2004, pet. ref'd).

Moreover, there is no evidence the State suppressed the alleged *Brady* material at issue. At the new trial hearing, appellant's counsel testified that he had access to the police report wherein S.B. mentioned that Reyes was the only other employee who worked the night the alleged incident occurred. Indeed, appellant's counsel mentioned that he attempted to contact Reyes but was unsuccessful. The State is not required to seek out evidence for the defendant's use. *See Taylor*, 93 S.W.3d at 499. While the State is required to produce exculpatory and impeachment evidence, the government is not required to facilitate the compilation of exculpatory material that could have been compiled by the defense. *Id*. Appellant was well aware that Reyes was mentioned in the police report and thus could have reasonably expected her to provide either exculpatory or

7

inculpatory information. We would be hard pressed to construe appellant's apparent inability to contact Reyes as evidence that the State intentionally or negligently withheld evidence. *See Taylor*, 93 S.W.3d at 499; *Staten*, 919 S.W.2d at 498.

## 2. Materiality

Assuming *arguendo* that the State did unlawfully suppress the evidence, appellant still carries the burden of proving that the evidence was material, i.e., that it created a probability sufficient to undermine confidence in the outcome of the proceedings. *See Thomas v. State*, 841 S.W.2d 399, 404 (Tex. Crim. App. 1992). "Evidence is material under the third *Brady* factor where there is a 'reasonable probability' that the outcome of the trial would have been different if the suppressed evidence had been disclosed to the defendant." *Taylor*, S.W.3d 93 at 501.

At the hearing on appellant's motion for new trial, appellant's trial counsel acknowledged that in his opening statement that he placed appellant and S.B. in the pump house together but argued to the jury that it was S.B who made the initial advance. He further acknowledged that because the incident occurred in the pump house, there were no witnesses to the act itself. Thus, as the State properly points out, the fact that there were no witnesses to the incident, and because appellant trial counsel advanced the defensive theory that it had been S.B. who made the initial advance in the pump house, Reyes's general statement that she "never saw [appellant] go to the pump house when [S.B.] was working" would have very little, if any, effect on the outcome of the trial. *See Hampton*, 86 S.W.3d at 612 (holding that "the mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense") (quoting *United States v. Agurs*,

8

427 U.S. 97, 109 (1976)).  We conclude that Reyes's statement was not material based on the record of this case.  Appellant has not shown a reasonable probability that had the statements been disclosed earlier, the outcome of the trial would have been different.  See *id*. at 612 n.26; *Wilson*, 7 S.W.3d at 146.

Appellant's second issue is overruled.

### III. CONCLUSION

We affirm the trial court's judgment.

_____
ROGELIO VALDEZ,
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b).
Memorandum Opinion delivered and
filed this the 19th day of June, 2008.